

FILE
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE APR 19 2018
CHIEF JUSTICE

This opinion was filed for record

at 8:00 Am on April 19, 2018

SUSAN L. CARLSON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 94409-1 |
| Respondent, | ) | |
| | ) | |
| v. | ) | EN BANC |
| | ) | |
| TANYA DESIREE JAMES-BUHL, | ) | |
| | ) | FILED APR 19 2018 |
| Petitioner. | ) | |
| | ) | |
| | ) | |

FAIRHURST, C.J.—Tanya Desiree James-Buhl, a teacher, was charged with failure to comply with the mandatory reporting law that requires specified professionals to report incidents of child abuse when they have reasonable cause to believe a child has suffered abuse or neglect. RCW 26.44.030(1)(a). James-Buhl received notice of child abuse from her three daughters alleging that they were being touched inappropriately within the home by their stepfather, but she did not make an immediate report. At issue is whether James-Buhl's employment status as a teacher

required her to report the alleged abuse of her own children, who are not her students, when the abuse occurred within the home and was perpetrated by another family member. We reverse the Court of Appeals and hold that a teacher's failure to comply with the mandatory reporting duty must have some connection to his or her professional identity.

## I. FACTS AND PROCEDURAL HISTORY

### A. Factual background

James-Buhl is a public school teacher who lives with her three daughters. Her daughters are not her students, nor have they ever been. At all times relevant to the facts of this case, James-Buhl was married to Joshua Hodges, the girls' stepfather. In May 2015, one of James-Buhl's daughters told her pastor that Hodges had been touching her and the pastor referred the matter to Child Protective Services. The Pierce County Sheriff's Department began investigating the allegations, and, based on its investigation, all three of James-Buhl's daughters told their mother about Hodges' alleged abuse as early as January 2015. All of the alleged abuse occurred at James-Buhl's home.

The State charged James-Buhl with three counts of failure to comply with the mandatory reporting law applicable to her as "professional school personnel." RCW 26.44.030(1)(a). The State alleged that James-Buhl knowingly failed to report child

abuse on or between January 1 and May 20, 2015. But the State did not allege that James-Buhl's daughters were her students or enrolled in the school where she taught.

B.     Procedural history

James-Buhl filed a motion to dismiss the charges, arguing that RCW 26.44.030(1)(a) did not apply to her in this case because her daughters were not her students and because she learned about the alleged abuse in her parental role while in her home, not as a teacher. The trial judge agreed and dismissed the charges.

The State appealed the dismissal.[1] The Court of Appeals reversed based on its interpretation of the plain language of RCW 26.44.030(1)(a). The Court of Appeals first explained that RCW 26.44.030(1)(a) does not include a course of employment limitation because there are express limitations in subsections (1)(b), (1)(c), and (1)(e), which "clearly shows that the legislature did not intend to include such a limitation for subsection (1)(a)." *State v. James-Buhl*, 198 Wn. App. 288, 298, 393 P.3d 817 (2017). The court held that "the mandatory reporting duty for the

---

[1] On appeal, James-Buhl raised a new argument that she had not raised below. She argued that even if RCW 26.44.030(1)(a) applied to her, the dismissal was still proper because she did not have reasonable cause to believe her daughters were being abused. "'Reasonable cause' means a person witnesses or receives a credible written or oral report alleging abuse, including sexual contact, or neglect of a child." RCW 26.44.030(1)(b)(iii). This argument presented a factual question so the Court of Appeals declined to consider it. *State v. James-Buhl*, 198 Wn. App. 288, 301-02, 393 P.3d 817 (2017) (James-Buhl did not file a CrR 8.3(c) motion or otherwise argue that the State had insufficient evidence to show reasonable cause). James-Buhl raised this issue again in her petition for review. She reiterates the facts of the case and argues that "[g]iven what she knew, [she] acted appropriately as a mother as she did not have 'verified' information that gave her 'reasonable cause' to believe that [her daughters] had been sexually assaulted." Pet. for Review at 11. We agree with the Court of Appeals that this is a factual issue and decline to address it.

professionals identified applies in all circumstances . . . mean[ing] that a teacher can be subject to prosecution for failing to report suspected child abuse based on information obtained at home, on vacation, or anywhere else." *Id.* at 300-01. James-Buhl petitioned for review, which this court granted. *State v. James-Buhl*, 189 Wn.2d 1008, 402 P.3d 829 (2017).

## II. ISSUE

Does RCW 26.44.030(1)(a) apply to teachers when their own children, who are not their students, report abuse by another family member perpetrated within the home?

## III. ANALYSIS

### A.    Standard of review

The dismissal was based on the trial court's statutory interpretation, which is a question of law reviewed de novo. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002) (citing *State v. Breazeale*, 144 Wn.2d 829, 837, 31 P.3d 1155 (2001); *State v. J.M.*, 144 Wn.2d 472, 480, 28 P.3d 720 (2001)). Statutory interpretation begins with the statute's plain meaning. *Lake v. Woodcreek Homeowners Ass'n*, 169 Wn.2d 516, 526-27, 243 P.3d 1283 (2010). Plain meaning is "discerned from the ordinary meaning of the language at issue, the context of the statute in which that provision is found, related provisions, and the statutory scheme as a whole." *State v. Engel*, 166 Wn.2d 572, 578, 210 P.3d 1007 (2009). When

4

ascertaining the plain meaning of the statute, we "must not add words where the legislature has chosen not to include them," and we must "construe statutes such that all of the language is given effect." *Rest. Dev., Inc. v. Cananwill, Inc.*, 150 Wn.2d 674, 682, 80 P.3d 598 (2003). If the plain language is unambiguous, the court must give it effect. *State v. Armendariz*, 160 Wn.2d 106, 110, 156 P.3d 201 (2007). However, if the statute remains susceptible to multiple meanings, it is appropriate for the court to resort to aids to construction, including legislative history. *Campbell & Gwinn*, 146 Wn.2d at 12 (citing *Cockle v. Dep't of Labor & Indus.*, 142 Wn.2d 801, 808, 16 P.3d 583 (2001); *Timberline Air Serv., Inc. v. Bell Helicopter-Textron, Inc.*, 125 Wn.2d 305, 312, 884 P.2d 920 (1994)).

B.    Professionals named in the statute must report child abuse or face criminal consequences

The mandatory reporting law imposes a duty on various classes of people. James-Buhl was charged under RCW 26.44.030(1)(a), which requires that "[w]hen any . . . professional school personnel . . . has reasonable cause to believe that a child has suffered abuse or neglect, he or she shall report such incident, or cause a report to be made, to the proper law enforcement agency or to the department." "'Professional school personnel'" includes "teachers, counselors, administrators, child care facility personnel, and school nurses." RCW 26.44.020(19). A mandatory reporter named in RCW 26.44.030 who knowingly fails to make an "immediate oral report" of child abuse "shall be guilty of a gross misdemeanor." RCW 26.44.040,

5

.080. The reporting requirement also applies "to any adult who has reasonable cause to believe that a child who resides with them, has suffered severe abuse, and is able or capable of making a report." RCW 26.44.030(1)(d).[2]

The legislature's declaration of purpose explains the rationale behind the mandatory reporting law. The legislature declared that the "bond between a child and his or her parent, custodian, or guardian is of paramount importance," but the State is justified in emergency intervention into the lives of parents and children when the child is abused. RCW 26.44.010. The legislature intends that these reports of child abuse will prevent further abuse. If instances arise in which the safety of the child conflicts with the legal rights of parents, the "interests of the child should prevail." *Id.* However, the mandatory reporting law "shall not be construed to authorize interference with child-raising practices." *Id.* When considering the application of the statute, we explained that "the State's interest in the protection of children is unquestionably of the utmost importance." *State v. Motherwell,* 114 Wn.2d 353, 365, 788 P.2d 1066 (1990).

At the time of the offense, James-Buhl was "professional school personnel" because she was employed as a teacher. The plain meaning of the statute requires teachers to report child abuse when there is reasonable cause to believe the incident

---

[2] "'[S]evere abuse'" means abuse that is severe enough to cause significant bleeding or swelling, deep bruising, bone fracture, unconsciousness, or death. RCW 26.44.030(1)(d).

occurred. This requirement is a mandatory directive with criminal consequences. *See State v. Krall*, 125 Wn.2d 146, 149, 881 P.2d 1040 (1994) (stating "the general rule that 'shall' is presumptively mandatory").

C.     Failure to comply with the mandatory reporting duty must have some connection between the individual's professional identity and the criminal offense

The reporting duty for professionals named in the statute, RCW 26.44.030(1)(a), creates a legally enforceable duty to report child abuse when there is some connection between the individual's professional identity and the criminal offense. While the Court of Appeals correctly held that there is no course of employment limitation for this reporting duty, we are unpersuaded by the State's argument that the reporting duty is ever present. Suppl. Br. of Resp't at 5. The plain language of RCW 26.44.030(1)(a) does not create an unlimited and unqualified duty to report child abuse because the statute refers to people by means of their occupation, not simply as adults or persons.

The State supported its argument with the history of statutory amendments creating a "pathway from a privilege to report to a general duty to report." Wash. Supreme Court oral argument, *State v. James-Buhl*, No. 94409-1 (Feb. 13, 2018), at 21 min., 48 sec., *audio recording by* TVW, Washington State's Public Affairs Network, https://www.tvw.org/watch/?eventID=2018021107. When the mandatory reporting law first took effect, it applied only to practitioners (doctors, dentists, etc.)

7

and created a permissive right to report child abuse of children "brought before him or coming to him for examination, care, or treatment." LAWS OF 1965, ch. 13, § 3. Subsequently, the legislature widened the scope of the law by making reporting mandatory, expanding the list of professionals, and removing the limitations on the circumstances under which the abuse became known. LAWS OF 1969, Ex. Sess., ch. 35, § 3; LAWS OF 1971, Ex. Sess., ch. 167, § 1; LAWS OF 1975, Ex. Sess., ch. 217, § 1; *see also* Suppl. Br. of Resp't at 14-15. We agree with the dissent that these amendments demonstrate an intent to expand the reporting duty, dissent at 3, but not necessarily to create an unlimited legal duty to report child abuse.[3] The State's proffered interpretation would effectively add words to the statute, requiring reporting when "any [adult who is employed as] . . . professional school personnel . . . has reasonable cause to believe that a child has suffered abuse or neglect." RCW 26.44.030(1)(a); *see also Jane Doe v. Corp. of Pres. of Church of Jesus Christ of Latter-Day Saints*, 141 Wn. App. 407, 426, 167 P.3d 1193 (2007) ("The legislature

---

[3] The dissent relies on legislative intent to endorse an interpretation it believes to be the only reasonable one. Dissent at 2-3. In 1975, the legislature removed the requirement for professional school personnel, and other identified professionals, when "attending a child as part of his regular duties" to report abuse, suffering, injury, or death to the "person in charge of the institution, organization, school, or the department or his designated representative" and instead left in place the requirement for professional school personnel, and other identified professionals, to report child abuse or neglect whenever the professional "has reasonable cause to believe" it occurred. LAWS OF 1975, ch. 217, § 1. The dissent believes that this amendment shows that an "adult who is employed as a teacher" (words not within the statute) is somehow implied through "professional school personnel." Dissent at 3. We fail to see the implication, nor is it necessary to dissect each legislative amendment when the plain meaning of the *current* statute resolves the issue.

did *not* frame the statute this way, i.e., it did not use the language 'any person who provides social services,' and leave it at that."). In contrast, RCW 26.44.030(1)(d) refers to "*any adult* who has reasonable cause to believe that a child who resides with them, has suffered severe abuse." RCW 26.44.030(1)(d) (emphasis added).

Since the statute imposes a mandatory duty on people in various occupational roles, failure to comply with that duty must have at least some connection between the individual's professional identity and the criminal offense. For example, a connection could be established because of the teacher's relationship to the child or relationship to the alleged abuser, or the circumstances in which the teacher gained reasonable cause to believe that a child has been abused. This surely includes the regular course of employment, but it goes beyond that time frame as well.[4] The trial court correctly recognized the need for a connection, explaining that "James-Buhl was not required to make a mandatory report in this case because she did not have a teacher/professional school personnel relationship with [her daughters]." Clerk's Papers at 40.

---

[4] There are likely constitutional limits to the scope of RCW 26.44.030(1)(a) because the State cannot infringe on the "fundamental right of parents to make decisions concerning the care, custody, and control of their children." *Troxel v. Granville*, 530 U.S. 57, 66, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000) (plurality opinion). This issue may arise if a parent is also the teacher of his or her own children. But that is not before us based on these facts, nor have the parties briefed it. The Washington Association of Criminal Defense Lawyers, as amicus, raise this constitutional issue, but we decline to address it. *See Harris v. Dep't of Labor & Indus.*, 120 Wn.2d 461, 467, 843 P.2d 1056 (1993) ("This court generally does not consider issues that are raised only by an amicus."); *State v. Hirschfelder*, 170 Wn.2d 536, 552, 242 P.3d 876 (2010) ("We need not address issues raised only by amici.").

Even though the protection of children is of the utmost importance, we "resist the temptation to rewrite an unambiguous statute to suit our notions of what is [or may be] good public policy." *State v. Jackson*, 137 Wn.2d 712, 725, 976 P.2d 1229 (1999). Prosecuting the mother of abused children for failure to report may or may not be the best way to advance child welfare. We need not decide such an important public policy decision because it is not a judicial function. *Id.*

## IV. CONCLUSION

We hold that failure to comply with the mandatory reporting duty in RCW 26.44.030(1)(a) requires some connection between the individual's professional identity and the criminal offense. We reverse the Court of Appeals and reinstate the trial court's dismissal of the charges against James-Buhl because the alleged child abuse occurred in her home, and was perpetrated by another family member, with no connection to her professional identity as a teacher. The mandatory reporting law does not impose an unlimited, ever present duty because it refers to people by means of their occupation, not simply as adults or persons.

_Fairhurst, C.J._

WE CONCUR:

_Johnson, J._                          _Wiggins, J._

_Madsen, J._

_Owens, J._                            _Gordon McCloud, J._

_Stephens, J._                         _Yu, J._

No. 94409-1

GONZÁLEZ, J. (dissenting)—This case is about mandatory reporting requirements. Teachers are mandatory reporters, and when they observe or learn of abuse, they must report. This duty does not end when school lets out. As a member of the teaching profession, Tanya James-Buhl had a duty to promptly report the sexual abuse of any child under RCW 26.44.030(1)(a). That the abused children happen to be James-Buhl's daughters does not change her mandatory reporting duty. It would be contrary to the purposes of RCW 26.44.030 for a teacher to be vigilant with a stranger's children, but turn a blind eye to her own children's abuse. Therefore, I respectfully dissent.

The majority holds James-Buhl to a lower standard because the abuse she learned about was not directly linked to her employment duties. This is contrary to the legislature's intent, which imposes a clear reporting requirement on any person who engages in RCW 26.44.030(1)(a)'s listed professions, including teachers.[1]

---

[1] The legislature assigned affirmative duties to different groups of people, each of whom have "primary and frequent contact with children who might be at risk of abuse." *Beggs v. Dep't of Soc. & Health Servs.*, 171 Wn.2d 69, 80, 247 P.3d 421 (2011); *see* RCW 26.44.030(1)(a)-(f).

"[A]ny restriction on the scope of reporting duties beyond that determined to be necessary by the Legislature constitutes undue interference when the State's goal is as important as the protection of children from physical and sexual abuse." *State v. Motherwell*, 114 Wn.2d 353, 366, 788 P.2d 1066 (2000).

In the process of interpreting a statute, our objective is to carry out the legislature's intent. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002). To do so, we begin with the plain meaning of the statute. *Blomstrom v. Tripp*, 189 Wn.2d 379, 390, 402 P.3d 831 (2017) (citing *Burns v. City of Seattle*, 161 Wn.2d 129, 140, 164 P.3d 475 (2007)); *Columbia Riverkeeper v. Port of Vancouver USA*, 188 Wn.2d 421, 440, 395 P.3d 1031 (2017) ("Plain language analysis also looks to amendments to the statute's language over time." (citing *Campbell & Gwinn*, 146 Wn.2d at 10-11)). On its face, there appears to be two reasonable interpretations of RCW 26.44.030. The majority's interpretation is among them. It reads the statute as requiring persons to report abuse when their professional identity is in some way connected to the abuse. Majority at 7. However, upon further inspection of "the text of the provision, the context of the statute in which the provision is found, related provisions, amendments to the provision, and the statutory scheme as a whole," *Columbia Riverkeeper*, 188 Wn.2d at 435, it turns out that the majority's interpretation is not what the legislature intended for RCW 26.44.030. There remains only one reasonable

2

interpretation: any person who engages in a listed profession must report when they have "reasonable cause to believe that a child has suffered abuse or neglect." RCW 26.44.030(1)(a).

In its review of the statute's history, the majority downplays a crucial amendment from 1975 that reveals two things regarding legislative intent. First, the legislature thought there was a distinction between the phrases "when any . . . professional school personnel . . . has reasonable cause to believe that a child has suffered child abuse or neglect, he [or she] shall report such incident" and "[w]hen a . . . professional school personnel . . . is attending to a child *as part of his [or her] regular duties* and has cause to believe a child [is] . . . abuse[d], he [or she] shall . . . report the incident." LAWS OF 1975, Ex. Sess., ch. 217, § 3 (emphasis added) (formatting omitted). Prior to 1975, RCW 26.44.030 subsections (1) and (2) distinguished abuse discovered in each of those situations. *Id.* Second, by deleting the second provision—removing the words "as part of [their] regular duties"—the legislature intended to apply the reporting duty to teachers broadly. *Id.* The 1975 amendment shows that the words "adult who is employed as a teacher" are implied by listing "professional school personnel." RCW 26.44.030(1)(a). Thus, the State's proffered interpretation does not "add words to the statute." Majority at 8.

The majority contends that RCW 26.44.030 clearly applies to professionals, not laypeople. Therefore, teachers have to report abuse only when they learn about

3

it through their professional identity. This conclusion requires reading the statute out of context. The legislature certainly could have added the limiting language that the majority reads into the statute, but intentionally omitted it.[2] *Rest. Dev., Inc. v. Cananwill, Inc.*, 150 Wn.2d 674, 682, 80 P.3d 598 (2003) (We "must not add words where the legislature has chosen not to include them.").

There is no excuse for failing to report suspected abuse, and the legislature wanted to hold certain professionals accountable for failing to report. It would be absurd to characterize James-Buhl's failure to report her children's abuse as a child-raising practice or reasonable parental discipline.[3] This would improperly return discretion into the statute, which the legislature removed in 1971. LAWS OF 1971, Ex. Sess., ch. 167, § 1 (changing "may" to "shall" (formatting omitted)). RCW 26.44.030 does not transform teachers into social workers; the statute merely requires teachers to report when they have "reasonable cause to believe that a child has suffered abuse or neglect." RCW 26.44.030(1)(a). Ultimately, the majority's

---

[2] The legislature expressly limited the scope for mandated reporters in other subsections, but left RCW 26.44.030(1)(a) to require mandatory reporting for the listed professionals without limitation. *See, e.g.*, RCW 24.44.030(1)(b) (limiting reporting duties to abuse discovered in "his or her official supervisory capacity"), (1)(c) (limiting reporting duties to abuse discovered in "the course of their employment"), (1)(e) (limiting reporting duties to abuse discovered in "the course of their representation of children").

[3] The majority is correct that the legislature noted the importance of the parent-child bond in its declaration of intent, but when read in its entirety, the statute's primary concern is the safety of the child. *See* RCW 26.44.010 ("When the child's physical or mental health is jeopardized, or the safety of the child conflicts with the legal rights of a parent, custodian, or guardian, the health and safety interests of the child should prevail.").

4

connection requirement does not further the protection of integrity of the family unit and parent-child bond.

When applied to the professionals listed in RCW 26.44.030(1)(a), the connection requirement creates varying levels of reporting duties. Teachers, for example, would have limited reporting requirements, and must report abuse only where they teach the child, work with the abuser, or learn of abuse while they are acting as a teacher. We have previously stated that the reporting duty does not turn on the individual's professional skill but rather the fact that all are in frequent contact with children. *Beggs v. Dep't of Soc. & Health Servs.*, 171 Wn.2d 69, 80, 247 P.3d 421 (2011) ("The mandatory reporters do not have skills or special knowledge in common; rather, the commonality among the class of mandatory reporters is primary and frequent contact with children who might be at risk of abuse."). The legislature did not intend for some professionals to report less than others.

The majority closes by explaining, "Prosecuting the mother of abused children may or may not be the best way to advance child welfare. We need not decide such an important public policy decision because it is not a judicial function." Majority 9-10. This statement misses the point. The present case concerns only a teacher's obligation to notify proper authorities when they learn about child abuse. The fact that it involves a mother is a distraction because "[t]he

5

class of persons [mandatory reporting] is designed to protect is the victims, not the abusers." *State v. Warner*, 125 Wn.2d 876, 891, 889 P.2d 479 (1995). I respectfully dissent.

González, J.